UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

RICHARD A. AYALA and
JUDIE A. AYALA,

    Debtors.

No. 7-13-13033 TA

CHARLES B. DUFF and
JAMES B. CARVER,

    Plaintiffs,

v.

Adv. No. 13-1105 T

RICHARD A. AYALA and
JUDIE A. AYALA,

    Defendants.

## MEMORANDUM OPINION

In this adversary proceeding Plaintiffs seek to have Richard Ayala's[1] debt declared nondischargeable under 11 U.S.C. § 523(a)(6).[2] The Court tried the proceeding on August 25. For the reasons set forth below, the Court rules that the debt is dischargeable.

---

[1] At. the conclusion of trial Plaintiffs dismissed their claim against Judie A. Ayala.
[2] Unless otherwise noted, all statutory references are to 11 U.S.C.

## I. FINDINGS OF FACT

The Court finds the following facts:[3]

Richard Ayala ("R. Ayala") and his brother Dennis Ayala (together, the "Ayalas") owned an approximate .9 acre parcel of real property near Navajo Dam in San Juan County, New Mexico (the "Lodge Property").[4] The Lodge Property is about 50 feet from the San Juan River, several miles southwest of Navajo Dam. The trout fishing is excellent.

Plaintiffs purchased a strip of land between the Lodge Property and the San Juan River (the "Riverfront Strip"). The Riverfront Strip is an irregularly shaped parcel about 50 feet wide and 350 feet long.[5] The Lodge Property never touches the river; the Riverfront Strip is always between the two. Plaintiffs bought the Riverfront Strip as part of a much larger real estate purchase.

The New Mexico Department of Game and Fish has a perpetual easement on the Riverfront Strip that allows the public to go onto the strip and fish from the bank of the river. The easement does not allow boats to anchor or enter the water along the strip, nor does it allow wading. Because of the public access, trash and litter are a problem along properties such as the Riverbank Strip.

---

[3] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir.1979) (holding that a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr.N.D.Ill.2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

[4] During the period in question the Ayalas were purchasers of the Lodge Property under a real estate contract with Mariano and Kathleen Sanchez, dated August 17, 2008. The Sanchezes subsequently terminated the contract for nonpayment, and now own the Lodge Property. The Ayalas have no further interest.

[5] The surveyed size is .37 acres.

The Ayalas[6] built a fishing lodge on the Lodge Property in 2008 (the "Ayala Lodge"). Richard Ayala, a licensed contractor, was the primary contractor for the Ayala Lodge. Dennis Ayala is not a contractor.

The Ayalas filed plans for the Ayala Lodge with San Juan County in December 2007. The plans contained a boat ramp that would go from the Lodge Property, across the Riverfront Strip, to the river. San Juan County issued a building permit on January 14, 2008.

In December 2007, R. Ayala applied with the Army Corp of Engineers ("ACE")[7] for a boat ramp permit. He was told he did not need one, and no permit was issued.

In the spring and summer of 2008 the Ayalas began building the lodge and boat ramp, as well as doing other work on the Riverfront Strip. None of the work on the Riverfront Strip was authorized by Plaintiffs or their predecessors in title.

The purpose of the boat ramp was to provide access to the San Juan River for the guests of the Ayala Lodge. At the time, the Ayalas knew they did not own the Riverfront Strip.

San Juan County issued a certificate of occupancy for the Ayala Lodge on August 15, 2008. Plaintiffs took title to the Riverfront Strip a week later, on August 22, 2008. By then the Ayalas had completed most of the unauthorized work on the Riverfront Strip.

On August 23, 2008, Plaintiffs visited the Riverfront Strip and saw Brad Eaves operating a bulldozer and moving dirt, litter, trash, and native vegetation off the Riverfront Strip. Dennis Ayala was at the lodge and was supervising Mr. Eaves. Plaintiffs demanded that Dennis Ayala stop the work immediately, but he refused. The confrontation was unpleasant and heated. At the

---

[6] At some point in 2008 the Ayalas formed a New Mexico limited liability company, Ayala Lodge, LLC, with the intent of transferring ownership of the Lodge Property and all improvements to the LLC. That was never done.

[7] The ACE has jurisdiction over the boat ramp pursuant to, inter alia, the Rivers and Harbors Act of 1899, 33 U.S.C. § 401 et seq.

time of the confrontation, R. Ayala was in Albuquerque, unaware of the argument taking place. Indeed, there is no evidence R. Ayala even knew that Dennis Ayala and Brad Eaves were bulldozing the Riverfront Strip.

Someone (probably Dennis Ayala) told R. Ayala about the confrontation, and later that day he drove from Albuquerque to the Ayala Lodge. That evening R. Ayala met plaintiff James Carver for dinner at a local restaurant. During the meeting R. Ayala offered to buy the Riverfront Strip for $10,000. In response, Mr. Carver told R. Ayala that Plaintiffs would like to sell the Riverfront Strip to the Ayalas in the near future, for an undisclosed price. Mr. Carver did not make a counteroffer, although he described in some detail how much value the Riverfront Strip would add to the Lodge Property. It was clear Mr. Carver knew the Ayalas or their successors in title to the Lodge Property were the logical buyers for the Riverfront Strip, and needed the strip to operate the lodge effectively.

The Riverfront Strip cannot be developed, due to its size and shape, the state fishing easement, and lack of access to public roads.[8] The strip therefore has little economic value to anyone other than the owner of the Lodge Property. The Riverfront Strip has "hostage value" to the owner of the Lodge Property because of the river access problem it creates.

In March 2009, the Ayalas applied with ACE for a permit to add cobble to the boat ramp to prevent erosion. ACE issued the permit.

The Ayalas stopped all work on the Riverfront Strip in June 2009, after receiving a "cease and desist" letter from Plaintiffs' attorney. Plaintiffs then sued the Debtors, Dennis Ayala, and others in New Mexico's Eleventh Judicial District Court, commencing *Charles D.*

---

[8] The strip has river access but appears to be landlocked.

-4-

Case 13-01105-t    Doc 26    Filed 09/12/14    Entered 09/12/14 16:49:39 Page 4 of 10

*Duff and James B. Carver v. Dennis M. Ayala, et. al.,* no. D-1116-CV-2009-01510-4 (the "Trespass Action"). The case was assigned to Judge John Dean, Jr.

On April 15, 2013, after a trial on the merits, Judge Dean entered a Judgment for Liability Damages Against Defendants Dennis M. Ayala, Michael L. Ayala, Richard A. Ayala, and Judie A. Ayala, (the "Judgment"), and Findings of Fact and Conclusions of Law (the "Findings") in the Trespass Action.

Judge Dean found that the Trespass Action defendants were guilty of criminal trespass under § 30-14-1 NMSA 1978, and that they damaged the Riverfront Strip by scraping and removing the natural vegetation and building a boat ramp. Judge Dean found that the damages to the Riverfront Strip totaled $97,838.17, representing the cost to return the strip to its prior condition. Judge Dean further found that the portion of such amount owed by the Trespass Action defendants to Plaintiffs, based on the date Plaintiffs took title to the Riverfront Strip, was $7,625, or about 7.8% of the total damages. Pursuant to § 30-14-1 NMSA 1978, Judge Dean doubled the actual damages, so Plaintiffs' final judgment against the named defendants in the Trespass Action was $15,250, plus pre- and post-judgment interest and court costs.

Judge Dean entered judgment against the Trespass Action defendants jointly and severally. Despite that, he found that only Dennis Ayala was present on August 23, 2008 when the damage occurred.

Plaintiffs sold the Riverfront Strip in August 2013 for $40,000. As the strip has little or no independent economic value, the Court assumes the buyer hopes to "flip" the Riverfront Strip to the current owner of the Lodge Property or their successor, for a profit.

## II. DISCUSSION

Plaintiffs' claim is brought under § 523(a)(6), which provides:

> A discharge . . . does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

This subsection requires proof that there be: (i) an injury to person or property; (ii) by the debtor; (iii) that was willful; and (iv) that was malicious. *Fletcher v. Deerman (In re Deerman)*, 482 B.R. 344, 369 (Bankr. D.N.M. 2012). In *Penix v. Parra (In re Parra)*, 483 B.R. 752 (Bankr. D.N.M. 2012), the court discussed the "willful" and "malicious" requirements:

> [N]on-dischargeability under [§ 523(a)(6)] requires that the debtor's actions be both willful and malicious. The 'willful' element requires both an intentional act and an intended harm; an intentional act that leads to harm is not sufficient . . . [B]ecause the Tenth Circuit directs that willful and malicious are separate, distinct requirements, 'malicious' must be defined so that it is distinguishable from 'willful.' This Court concludes that the 'malicious' component of 11 U.S.C. § 523(a)(6) requires an intentional, wrongful act, done without justification or excuse.

*Id.* at 771-73 (citations omitted). The holding in *Parra* synthesizes the Tenth Circuit's ruling in *Panalis v. Moore (In re Moore)*, 357 F.3d 1125 (10th Cir. 2004),[9] with the Supreme Court's holding in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998).[10] The Court adopts *Parra's* reasoning and holds that, to be nondischargeable under § 523(a)(6), the debt must, inter alia, be the result of an intentional act and intended harm (willful), and also the result of an intentional, wrongful act, done without justification or excuse (malicious).

The Tenth Circuit uses a subjective standard in determining whether a defendant desired to cause injury or believed the injury was substantially certain to occur. *Via Christi Regional*

---

[9] "Without proof of *both* [willful and malicious] an objection to discharge under [§ 523 (a)(6)] must fail. *Id*. at 1129 (emphasis in original).

[10] "The word 'willful' in (a)(6) modifies the word 'injury' indicating that nondischargeabiltiy takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Geiger*, 523 U.S. at 61.

-6-

*Medical Ctr. v. Englehart (In re Englehart)*, 2000 WL 1275614, at *3 (10th Cir. 2000) ("[T]he 'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur."); *Saturn Systems, Inc. v. Militare (In re Militare)*, 2011 WL 4625024, at *3 (Bankr. D. Colo. 2011) (citing *Bombardier Capital, Inc. v. Tinkler,* 311 B.R. 869, 878 (Bankr. D. Colo. 2004).

The movant "bears the burden of establishing nondishargeability by a preponderance of the evidence." *In re Deerman*, 482 B.R. at 369 n. 18.

Denial of discharge is a harsh remedy, to be reserved for a truly pernicious debtor. *Soft Sheen Products, Inc. v. Johnson (In re Johnson)*, 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) (citing *In re Shebel*, 54 B.R. 199, 204 (Bankr. D. Vt. 1985)). The provisions denying the discharge are construed liberally in favor of the debtor and strictly against the creditor. *Id.* at 364.

As the court ruled in its Memorandum Opinion entered June 12, 2014, the Judgment and Findings of the Trespass Action are entitled to issue preclusive effect.

Plaintiffs failed to carry their burden of proof in two areas. First, the evidence does not show that R. Ayala (as opposed to Dennis Ayala or another Trespass Action defendant) caused the August 23, 2008 damage complained of. Judge Dean found that on August 23, 2008 Plaintiffs contacted Dennis Ayala and asked him to stop all work on the Riverfront Strip, but that Dennis Ayala refused to do so. Judge Dean made no finding that R. Ayala trespassed on August 23, 2008 or injured the Riverfront Strip on that date. Judge Dean further found that more than 92% of the damage to the Riverfront Strip took place before Plaintiffs took title on August 22,

2008, and that the remaining damage occurred on August 23, 2008. This is consistent with the evidence introduced at trial of the adversary proceeding.[11]

Had R. Ayala, rather than Dennis Ayala, been supervising Mr. Eaves on August 23, 2008, and had R. Ayala refused to stop work when Mr. Carver demanded it, Plaintiffs would have carried their burden of proof that R. Ayala injured their property. As it is, the Court concludes that Plaintiffs did not prove R. Ayala injured the Riverfront Strip after August 22, 2008.[12]

Second, even if the $7,625 in damage were attributable to R. Ayala, Plaintiffs did not prove that he intended to injure the Riverfront Strip.[13] Both sides knew the Riverfront Strip had little value except to the owner of the Lodge Property. Both sides were smart enough to know they were engaged in a "hostage value" negotiation. There is nothing wrong with Plaintiffs seeking to obtain the maximum price for the Riverfront Strip, although the Court finds disingenuous Plaintiffs' testimony that they were only trying to help the Ayalas add value to the Lodge Property. It is clear Plaintiffs' primary motive was to maximize their personal gain, not to assist the Ayalas. Had Plaintiffs wanted to help the Ayalas, they would have sold the Riverfront Strip for the $10,000 offered by R. Ayala on August 23, 2008.

The Ayalas obviously were not happy about Plaintiffs' insistence on a "hostage value" price for the otherwise worthless Riverfront Strip. Dennis Ayala's decision to bulldoze the strip,

---

[11] After August 23, 2008, the only damage to the Riverfront Strip appears to have been the widening of the boat ramp by some unknown amount and the placement of the easily removable horseshoe and fire pits.

[12] It appears that the enterprise known as the Ayala Lodge was a general partnership, since the conveyance into the LLC never occurred. Some of Dennis Ayala's actions could be imputed to R. Ayala under the law of general partnerships, but the Court holds that § 523(a)(6) requires direct action by the debtor, not imputed action by the debtor's general partner.

[13] Even if R. Ayala knew or reasonably suspected that his conduct could affect Plaintiffs adversely, the Court is "not automatically required ... to find 'willful and malicious injury.'" *Dorr, Bentley & Pecha, CPA's P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524, 1527 (10th Cir.1993). Improper conduct without a "culpable state of mind" is generally not enough to render a debt nondischargeable under § 523(a)(6). *Id.*

and his refusal to stop when asked, likely stemmed from the "hostage value" dynamics of the situation, which carried with it the specter of financial ruin for the Ayala Lodge.[14]

Even so, there is little evidence that R. Ayala or his brother intended to harm the Riverfront Strip. One or both of the Ayalas (the Court cannot tell which) intended to make the changes to the Riverfront Strip at issue in this proceeding. Did he or they think those changes injured the strip? There is no evidence of that. It is entirely plausible to view the addition of a boat ramp; the removal of trash, litter, and vegetation; the leveling and grading of the land; and the addition of horseshoe and fire pits, as benefitting rather than harming the economically worthless strip. Destruction to a preservationist is progress to a developer. Judge Dean found that the Trespass Action defendants did in fact damage the Riverfront Strip, but Plaintiffs did not carry their burden of proving that R. Ayala *intended* to injure the property.

### III.    CONCLUSION

Based on the evidence presented at trial, the Court concludes that Plaintiff did not prove R. Ayala injured the Riverfront Strip after August 22, 2008, nor that he intended to injure the strip. The Judgment in the amount of $15,250, plus pre- and post-judgment interest and court costs, is dischargeable as to both defendants. The Court will enter a separate judgment to that effect.

---

[14] This specter materialized. The evidence shows that, without permission to use the Riverfront Strip as intended, the Ayala Lodge was not financially viable. There likely were other factors contributing to the demise of the lodge, but the (lost) fight with Plaintiffs appears to have been a major factor.

-9-

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: September 12, 2014.

Copies to:

Sophie S. Martin
1201 Lomas Blvd. NW, Suite C
Albuquerque, NM 87102

Gary Lakin
6727 Academy Rd. NE, Suite B
Albuquerque, NM 87109

-10-